IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JVC AMERICA, INC.,            :
                                     :
          Plaintiff,        :
                                     :
      v.                :        CIVIL ACTION NO.
                                     :        1:05-CV-0681-JOF
GUARDSMARK, LLC, et al.,    :
                                     :
          Defendants.     :

## OPINION AND ORDER

This matter is before the court on Defendant's motion for attorney's fees and litigation expenses [103-1]; Plaintiff's motion to alter or amend order [106-1]; Plaintiff's motion to strike motion [108-1]; Plaintiff's motion to review taxation of costs [109-1]; Plaintiff's motion for a hearing on attorney's fees [112-1]; and Plaintiff's motion to strike affidavit [113-1].

**I.    Background**

Plaintiff, JVC America, Inc., sued Defendants Guardsmark, LLC, and Monique Wilson, on March 11, 2005, alleging that Monique Wilson, a security guard provided by Guardsmark to JVC, conspired with Ketta "Dre" Woodard, an employee of Adecco Employment Services and contracted to work for JVC, to steal products from JVC, in particular an Electronic Arts NCAA 2005 football video disc.

In an order dated August 22, 2006, the court addressed numerous motions, including Defendant's motion for summary judgment and motions to strike inadmissible evidence. Relevant to the instant motion, the court framed the argument as follows:

> Plaintiff alleges that Wilson cooperated with Woodard in plotting the removal of the 2004 NCAA Sports CD-ROM from JVC's facility. From there, Plaintiff avers, the disc passed to Clay Duda, a friend of Woodard's. Duda had previously worked with Justin Kelley at an establishment called Johnny's Barbeque. Kelley and Caleb Kitchen attempted to sell the disc at a GameStop store on July 1, 2004. Plaintiff cites a series of depositions and declarations to support this allegation. Defendant responds that none of the evidence pointed to by Plaintiff is admissible, and therefore Plaintiff has no evidence from which a jury could conclude that Guardsmark's employee was involved in the theft of the disc out of which all of Plaintiff's damages claims arise. As such, Defendant contends, Plaintiff cannot show that Defendant caused its damages.

*See* Order, at 20. The court then reviewed all of the evidence adduced by Plaintiff to demonstrate that Dre Woodard and Ms. Wilson were involved in the theft of the video disc. *See id.* at 21-25. With regard to the admissibility of this evidence, the court found:

> The more significant portions of Plaintiff's evidence with respect to Monique Wilson's alleged involvement in the theft of the disc are statements made by Woodard to Anthony Williams and to Nechanta Alexander. Woodard allegedly informed both of these individuals that he could get product out of the JVC facility because he had the assistance of a female guard working at the facility. Although Mr. Williams and Ms. Alexander are available to testify, their reporting of Woodard's statement would still be hearsay under Rule 805 and therefore Woodard's statement, itself, must fall under some hearsay exception in order to be admissible.
>
> Plaintiff contends that because Woodard is "unavailable" either through his complete absence or through an assumption that he would plead the Fifth Amendment were he to be called to the stand, Williams' reporting of his conversation with Woodard could come into evidence as a statement

2

against interest under Federal Rule of Evidence 804(b)(3). Defendant disagrees, asserting that JVC merely speculates about what might happen at trial and has not demonstrated that Woodard is "unavailable." Defendant further contends that it is not clear that Woodard would take the Fifth Amendment rather than testify because Woodard also gave a statement to JVC where he denied the accusations of theft. Finally, Defendant argues that even if Woodard's statements satisfied the requirements of Rule 804(b)(3), the court should nonetheless exclude them under Rule 403 because they are prejudicial to Defendant.

Under Federal Rule of Evidence 804(b)(3), a statement is admissible if it:

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

*Id.*, 804(b)(3). To come within Rule 804(b)(3), (1) the declarant must be unavailable, (2) the statement must so far tend to "subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true"; and (3) the statement is corroborated by circumstances indicating its trustworthiness. *See United States v. Costa*, 31 F.3d 1073, 1077 (11th Cir. 1994).

A declarant is unavailable when he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . or testimony [] by process or other reasonable means." *See* Fed. R. Evid. 804(a)(5). The proponent of the hearsay statement bears the burden of showing that the declarant is unavailable. *See United States v. Acosta*, 769 F.2d 721, 723 (11th Cir. 1985). Plaintiff has stated only that "Woodard's whereabouts are currently unknown." *See* Response, at 7. The Eleventh Circuit has not explicitly addressed the "availability" of a witness under the circumstances presented in this case. The court did reject evidence under Rule 804(b)(3) where there was "no showing that the declarants were unavailable" and where the proponent made no effort to show the witness was unavailable. *See Card v. Dugger*, 911 F.2d 1494, 1515 (11th Cir. 1990), and

3

*United States v. Walker*, 59 F.3d 1196, 1199 (11th Cir. 1995).  Other cases reach similar results.  *See*, *e.g.*, *United States v. Abreu*, 342 F.3d 183 (2d Cir. 2003) (where defendant's son resided in the Dominican Republic, son was not "unavailable" where there was no evidence that defendant had "made any efforts or taken any steps to procure his son's attendance or testimony at trial"); *United States v. Draiman*, 784 F.2d 248, 258 (7th Cir. 1986) (where neither Government nor defendant knew where witness was at time of trial, court properly refused to admit testimony because proponent did not make showing that witness was "actually unavailable").  *Compare United States v. Ochoa*, 229 F.3d 631, 637-38 (7th Cir. 2000) (court declared witness unavailable where FBI spent several days trying to locate witness, speaking to his employer, landlord, and others, and obtaining a material witness warrant, all to no avail).

Here, neither Plaintiff nor Defendant knows whether Woodard is available or not.  Woodard has not been deposed.  The court does not even know whether either party has actively pursued locating him.  The court is left to speculate whether Woodard might eventually be located.  Based on the information before the court, the court finds that Plaintiff has not met its burden of demonstrating that Woodard is unavailable.

In the alternative, Plaintiff contends that Woodard is unavailable because he would likely take the Fifth Amendment if called to the stand.  It is true that in the Eleventh Circuit when a witness exercises his Fifth Amendment rights, he is unavailable for the purposes of Rule 804(b)(3).  *See United States v. Jernigan*, 341 F.3d 1273, 127 (11th Cir. 2003) ("the first prong of the test is satisfied, as [witness] exercised his Fifth Amendment right not to testify at trial"); *United States v. Thomas*, 62 F.3d 1332, 1337 (11th Cir. 1995) ("Because they invoked their Fifth Amendment privilege to remain silent, it is clear that the McCoys were unavailable.").  However, here again, the court is left only to speculate as to whether Woodard would plead the Fifth Amendment.  While the court recognizes that the law does not require Woodard to be brought to the stand to invoke his privilege, some assertion of the right is required.  The court has no indication from Woodard, or even his counsel, as to whether he would exercise such a right.

The court finds that *Macuba* was not intended to allow for the admission of evidence under these circumstances.  Rather, as *Macuba* and *McMillan v. Johnson*, 88 F.3d 1573 (11th Cir. 1996), explain, these cases allow "otherwise admissible evidence to be submitted in an inadmissible form

at the summary judgment stage, though at trial it must be submitted in admissible form." *Id.* at 1584. Thus, the court may consider the affidavit of a witness who was not deposed during discovery, but "a suggestion that admissible evidence might be found in the future is not enough to defeat a motion for summary judgment." *Id.* Because the court finds that Plaintiff has not demonstrated Woodard is unavailable, the court need not address whether the statements are against his penal or pecuniary interest or whether they are corroborated by other evidence.

*See* Order, at 25-29.

Ultimately, the court held that:

no reasonable jury could conclude – based on Ms. Alexander's "wanding" observations and Detective Kanazawa's conclusions concerning Ms. Wilson – that Ms. Wilson was involved in the chain of events that led to the theft of the NCAA sports disc. Thus, Plaintiff has no evidence to demonstrate that Ms. Wilson's actions caused the damages it suffered, and the court grants Defendant's motion for summary judgment on this basis.

*Id.* at 32.

Plaintiff then filed the instant motion for reconsideration contending that the court committed "clear error" and caused a "manifest injustice" in misapplying the Eleventh Circuit precedent of *Macuba* and *McMillan*. Plaintiff asserts that whether Woodard is available or not is a matter that cannot be addressed until trial. Plaintiff also contends that the court should have given it an opportunity to address the issue of Woodard's availability before ruling on Defendant's motion for summary judgment. With its motion for reconsideration, Plaintiff presents the new affidavits of Detective Kanazawa and Tamura Lee, an employee of Plaintiff. Detective Kanazawa outlines the steps he took during the investigation to locate Woodard. Ms. Lee also testifies about her efforts to locate Woodard through internet searches and calling his last known address.

Defendant responds that Plaintiff's motion is not appropriate on reconsideration because it raises arguments and facts that Plaintiff could have addressed at the time the parties briefed the motion for summary judgment.  Defendant argues that *Macuba* and *McMillan* do not allow for the consideration of speculative hearsay evidence at the summary judgment stage.

The court also addresses below other post-judgment motions filed by the parties.

## II.  Discussion

### A.  Motion to Alter or Amend

#### 1.  Availability of Dre Woodard

In its order, the court thoroughly discussed *Macuba* and *McMillan*, cases that had been briefed by both parties.  Nothing in Plaintiff's motion for reconsideration raises any new points about those cases but rather simply argues that the court got it wrong.  That is an argument appropriate for appeal and not a motion for reconsideration.  Several aspects of Plaintiff's motion, however, require further discussion.

To be clear, Plaintiff attempts to conflate two separate analyses.  Despite Plaintiff's protestations, the court did not require Plaintiff to establish Woodard's availability at the summary judgment stage.  Rather, the court stated that Plaintiff had made no efforts at all to establish the status of Woodard's availability.  The court had before it only speculation as to whether Woodard would be available.  The court had no information as to what efforts either party had made to locate Woodard.  For this reason, Plaintiff's red herring argument that the court has "established a new standard" is wholly unavailing.  The court has not

6

made new law.  It has always been the burden of the proponent of hearsay evidence to show that it fits within an exception.  Thus, it is not true that "[u]nder the legal standard that existed at the time, JVC was not required to present such evidence and, thus, did not do so." *See* Motion, at 4.  Even on a motion for summary judgment, a party may not argue to the court "trust us," this evidence will be admissible by the time we get to trial.  At the very least, there must be some showing that the evidence would be admissible by that point.

The issue is not whether Woodard is available or not; it is not whether Woodard's availability is a moving target; the issue is whether Plaintiff made any demonstration to the court that it had made any efforts to try to locate him.  It is true that the issue of Woodard's availability might have to be revisited at some point, notably at trial, but Plaintiff made no effort to demonstrate that he was unavailable at the time of the summary judgment briefing, despite the fact that this was a significant issue that the parties argued extensively in briefing.

Plaintiff complains that the court made this ruling without giving Plaintiff "the opportunity to be heard or to supplement the record" on this issue.  *See* Motion, at 6.  However, the issue of whether Woodard would be available was substantially addressed by the parties in numerous briefs, including: Plaintiff's Brief in Opposition to Guardsmark, LLC's motion to strike inadmissible evidence, Docket Entry 66, at pages 2-7; Guardsmark, LLC's reply brief in support of its first motion to strike inadmissible evidence, Docket Entry 70, at pages 1-7; and Plaintiff's Brief in Opposition to Guardsmark's second motion to strike inadmissible evidence, Docket Entry 74, at pages 9-15.  In fact, in Docket Entry 70,

7

Guardsmark specifically asserts that "there is no evidence that JVC has made any attempt to locate Woodard and confirm whether, in fact, he will be available at trial." *Id.* at 7.[1] It is hard to imagine any more direct challenge to Woodard's availability. Thus, Plaintiff was on notice at that point that Woodard's availability was at issue. If Plaintiff wanted to be heard on the matter of Woodard's availability, it could have requested so at the time of the briefing on summary judgment. It did not and it is not the court's responsibility to issue such an invitation. Despite Plaintiff's argument to the contrary, Rule 804(b)(3) does not require the court to hold a hearing.

The court did not "devise[] a new standard and impose[] a new burden" on Plaintiff. *See* Motion, at 16. Rather, the court considered the arguments raised by both parties concerning *Macuba* and *McMillan* and made a ruling with respect to those cases. Plaintiff knew at the time that Woodard's availability was at issue and could have sought Detective Kanazawa's affidavit at that point. It did not do so.

Further, Plaintiff repeatedly cites to *Macuba* and *McMillan* while ignoring the court's discussion of Rule 801(c) and 801(a)(5) which state that the proponent must demonstrate that the declarant is unavailable at the time of the hearing. *Id.* Plaintiff made no effort to

---

[1]Similarly, Defendant asserted in its reply brief in support of its second motion to strike inadmissible evidence, Docket Entry 95, that

> To establish Woodard's unavailability, JVC could have attempted any one of a number of things, including attempting to: 1) serve Mr. Woodard with a subpoena; 2) notice his deposition; and/or 3) submit an affidavit of a private investigator hired to locate him.

*Id.* at 8. Plaintiff was on notice, then, that whether it attempted to locate Woodard or not, was an issue in the litigation.

show that Woodard was unavailable at the motion for summary judgment stage of the proceedings. Plaintiff argues that a "hearing" is when the court should have made the decision on unavailability because it would be the "last opportunity for the proponent to have the evidence admitted in the case." *See* Motion, at 12. However, Plaintiff does not explain why the same should not apply to a motion for summary judgment, a motion which can be dispositive. Thus, Plaintiff's assertion that the court's ruling "requires JVC to show conclusively at summary judgment that Woodard is unavailable" is false. *See* Motion, at 11. The bottom line is that Plaintiff made no effort to demonstrate that it attempted to locate Mr. Woodard at any stage of the litigation up to and including motions for summary judgment.

The fact that Plaintiff chose to make these efforts after receiving the court's order is also unavailing. Plaintiff has not shown that Detective Kanazawa's or Ms. Lee's additional information was unavailable at that time.

2.   <u>Causation</u>

Plaintiff contends that even without the statements of Dre Woodard, there is sufficient evidence from which a reasonable jury could conclude that Defendant caused Plaintiff's damages.  Again, this is not a proper argument on a motion for reconsideration because it was briefed and considered in the court's August 22, 2006 order, and Plaintiff has not provided any reason why it should be reconsidered.  In any event, the court did not make any credibility determinations with respect to the evidence.  The court simply stacked up the evidence Plaintiff adduced without Woodard's statements and determined that no reasonable jury could conclude from Ms. Alexander's "wanding" observations and Detective Kanazawa's conclusions concerning Ms. Wilson that Ms. Wilson had participated in the theft of the disc along with Woodard.  Unlike the cases cited by Plaintiff, *see* Motion, at 17-18, it is not that the court chose among equally plausible theories and rejected Plaintiff's; rather, Plaintiff did not provide any evidence to support its favored theory, and therefore, no reasonable jury could find for Plaintiff.  For the foregoing reasons, the court DENIES Plaintiff's motion to alter or amend order [106-1].

**B.   Taxation of Costs[2]**

Defendant seeks costs of $14,095.66 for deposition expenses; $4,069.76 for photocopying; $2,856.11 for travel expenses; $624.76 for service of process; and $150 for filing fees.  Plaintiff filed a motion for the court to review Defendant's bill of costs.  Plaintiff

---

[2]The court GRANTS Plaintiff's motion to strike motion to review taxation of costs [108-1].

argues that Defendant is not entitled to a full recovery of court reporter fees because Defendant did not provide sufficient documentation to show what it had paid for court reporter expenses.  Plaintiff further contends that Defendant is not entitled to recover for copies of documents because defense counsel's affidavit states only that the copies were necessarily obtained.  Plaintiff avers that Defendant is not entitled to travel and mileage costs because travel of attorneys to take depositions is not taxable under section 1920.

Federal Rule of Civil Procedure 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  *Id.* The presumption is in favor of awarding costs.  *See Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001).  The Supreme Court has held that district courts are limited in the costs that may be reimbursed by the list of items set forth in 28 U.S.C. § 1920 and related statutes.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).  Furthermore, the Eleventh Circuit has determined that the language of Rule 54(d) "reasonably bears intendment that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption."  *Gilchrest v. Bolger*, 733 F.2d 1551, 1556-57 (11th Cir. 1984).

11

1.    Depositions

In *EEOC v. W & O, Inc.*, 213 F.3d 600 (11th Cir. 2000), the court noted that taxation of deposition costs is authorized under 28 U.S.C. § 1920(2).  *Id.* at 620.[3]  The court further stated that the "question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in this case."  *Id.* at 620-21 (quotation and citation omitted).  Courts should "consider whether the prevailing party could have reasonably believed that it was necessary" to obtain the challenged transcript.  *Id.* at 623.  When individuals are named on a losing party's witness list, deposition transcripts are necessary.  *Id.* at 621.

In its initial bill of costs, Defendant referred the court to its motion for attorney's fees and expenses to document its request for $14,095.66 in court reporter transcripts for depositions.  Exhibit F in Defendant's motion for attorney's fees show billing records from defense counsel's law firm indicating payment of $11,302.42 for ten different invoices from court reporter services.  There is no identification of the individual deposed.  Similarly, Exhibit H lists two invoices for a total payment of $2,793.24.

Once Plaintiff filed its challenge to Defendant's bill of costs, Defendant supplemented its documentation and provided charts to indicate it seeks the costs of transcripts for the depositions (noticed by Defendant) of: Ronald Vangrov, Steven Williams,

---

[3]The court notes that *Fulton Federal Savings & Loan Association v. American Insurance Company*, 143 F.R.D. 292 (N.D. Ga. 1991) (Forrester, J.), cited by Plaintiff in its opposition to Defendant's bill of costs, was decided prior to the Eleventh Circuit's extensive discussion of costs in *W & O, Inc.*

12

James B. Springer, Nechanta Alexander & Robert Larkin, Anthony Williams & Derek Hightower, Dane Kanazawa, Kathleen Fionte, and Anna Brown.  The following witnesses were listed in Plaintiff's Rule 26 initial disclosures:  Ronald Vangrov, Steven Williams, James B. Springer, Anthony Williams, Nechanta Alexander, and Dane Kanazawa.  Derrick Hightower and Anna Brown were listed as witnesses by Plaintiff in response to interrogatories.  Mr. Larkin was an official with Asset Protection Associates, Inc., which conducted the undercover operation.  The undercover operation was discussed at length in the summary judgment briefings.  Ms. Fionte worked with Adecco Employment Services, Inc., the contracting agency for whom Ketta "Dre" Woodard worked.  She testified about the employment record of Woodard.  Defendant also seeks costs for the depositions (noticed by Plaintiff) of D. Carroll Toohey, Bennie Roy, Jon Burgan, and Ron Byrd.

Because the witnesses were either noticed by Plaintiff or were listed in Plaintiff's initial disclosures and responses to interrogatories, the court finds that under *W & O*, Defendant could have reasonably believed it was necessary to obtain the transcript of those depositions.

Plaintiff further challenges the amounts on the deposition invoices.  Plaintiff contends that the invoices submitted by Defendant from Alexander Gallo reporting service are "non-itemized."  To support this contention, Plaintiff submits the declaration of Jackson Dodsworth, Director of Client Relations for Alexander Gallo, who testified that it is the company's practice to issue non-itemized invoices and that such invoices might include

13

costs for a condensed transcript, exhibits, tabs, real time, ASCII or expedited orders.  Mr. Dodsworth, however, did not testify as to what the invoices at issue here included.

Defendant submitted the invoices upon which it based its deposition costs.  Most of the invoices submitted by Defendant are from the Alexander Gallo reporting service.  There is no breakdown of different costs for each deposition.  Because there is no breakdown, however, the court cannot determine whether any of the fees were non-reimbursable expenses.  Because Plaintiff provided the declaration testimony of Mr. Dodsworth at Alexander Gallo, Plaintiff obviously had access to an individual who – if possible from the company's records – could have broken down the costs listed in the invoices.  Because Mr. Dodsworth did not specifically testify as to any of the costs charged on the invoices at issue in this matter, the court cannot speculate as to whether those invoices include fees outside of § 1920.  Because Plaintiff has not proffered any information to the contrary, the court finds that the invoices for depositions presented by Defendant are a sufficient basis upon which the court can award costs for the depositions.  Therefore, the court awards Defendant $12,522.11 in court reporter fees from the Alexander Gallo invoices.

The invoice from Esquire Deposition Services, LLC, submitted for the Anna Brown deposition totaled $1543.55.  However, that invoice clearly stated that it included costs for administration and delivery fees, as well as ASCII and condensed transcripts.  Those fees are not recoverable under section 1920.  Therefore, the court finds that Defendant may recover only $1374.60 for the Anna Brown deposition.

14

Thus, the court awards $1374.60 for the Anna Brown deposition and $12,522.11 for the Alexander Gallo depositions or a total of $13,896.71.

>    2.    Photocopying

In its initial Bill of Costs, Defendant sought $4,069.76 in photocopying expenses. Defendant referred the court to the exhibits attached to its motion for attorney's fees and expenses as documentation for its bill of costs. Defendant averred that Exhibits D and G supported its photocopying charge request. Exhibit D, however, is simply a copy of the billing records sent to the client. Occasionally, a notation for photocopying appears at the bottom of these bills, but the court cannot determine what photocopies were made and at what charge. Exhibit G appears to be a printout from Defendant's counsel's billing system compiling all of the photocopy requests and totaling $2985.00. Again, however, there is no indication as to the charges per page.

Once Plaintiff challenged Defendant's bill of costs, Defendant also submitted invoices from Legal Image on October 20, 2005, for $801.76, referencing Bates labeling and light copies, and on November 18, 2005, for $189.83 for medium copies and Bates labeling. Defendant then "estimates" that at least another ten percent of its copying costs were attributable to discovery matters, and it produced more than 8500 pages to Plaintiff during discovery. Based on these estimates, Defendant seeks an additional $406.98 in photocopying expenses. Thus, Defendant has amended its request for photocopying to $1398.57.

Section 1920(4) authorizes the recovery of photocopy costs under certain circumstances. The taxing of costs is appropriate if the "prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *EEOC v. W & O, Inc.*, 213 F.3d 600, 613 (11th Cir. 2000). The court in *W & O* rejected the argument that copies were not "necessary" because they were neither used as court exhibits nor furnished to the court or opposing counsel. Instead, the court found that "[u]se of information contained in a file is not a prerequisite to finding that it was necessary to copy the file." *Id.* at 623.

The court will award Defendant $991.59 for photocopying expenses based on the two invoices from Legal Image. The court cannot award additional expenses based on such a speculative estimate by Defendant's counsel.

### 3.   Travel Expenses

Defendant seeks $2856.11 in travel costs. Section 1920 does not specifically authorize travel expenses. Defendant is correct that several cases in the Eleventh Circuit have awarded travel expenses. However, as Plaintiff notes, those cases were civil rights litigations where the court's decision was informed by the purposes of 42 U.S.C. § 1988. *See*, *e.g.*, *Cullen v. Georgia Department of Transportation*, 29 F.3d 1489 (11th Cir. 1994) (noting that travel expenses were appropriate under § 1920 to extent they are reasonable, but relying on civil rights litigation cases); *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) (discussing recoverability of costs in civil rights context). *Compare Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) (attorney travel and computer research not

16

deemed "costs" within § 1920).  Because the parties engaged in contract litigation and not civil rights litigation governed by considerations of section 1988 and because Defendant provided no other compelling reason for the award of travel costs, the court declines to award Defendant $2856.11 in travel costs.

In sum, the court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to review taxation of costs [109-1].  The court DIRECTS Plaintiff to pay the following costs: $150 (fees of the Clerk); $624.76 (fees for service and subpoenas); $13,896.71  (court reporter transcripts); and $991.59 (photocopies) for a total of $15,663.06.

### C.    Availability of Attorney's Fees under Contract

Shortly after the court issued its ruling on Defendant's motion for summary judgment, Defendant filed a motion for attorney's fees and litigation expenses pursuant to Federal Rule of Civil Procedure 54(d)(2) and Paragraph 19 of the contract signed between the parties.  Defendant seeks $265,078.00 in attorney's fees and $41,473.13 in expenses.

Plaintiff responds that Defendant has waived its right to attorney's fees and expenses under the contract because it did not assert a compulsory counterclaim seeking such fees, nor did Guardsmark assert its claim for contractual attorney's fees in either of its motions for summary judgment.  Because the court has entered final judgment, Plaintiff argues, Defendant has waived its right to attorney's fees.  Plaintiff also asserts that the provision of attorney's fees in the contract is in the form of an exculpatory clause and therefore is required to be legible and prominent under Georgia contract law.  Finally, because Defendant never submitted any billing or expense documentation in response to Plaintiff's

17

request for documentation concerning Defendant's tenth affirmative defense, Plaintiff argues that Defendant should not be permitted to use that documentation now to support an attorney's fees claim.

As an initial matter, there seems to have been some confusion between the parties concerning the relationship between Defendant's bill of costs filed pursuant to 28 U.S.C. § 1920 and its request for attorney's fees and expenses of litigation.  Contrary to Plaintiff's assertion, Defendant does not seek double recovery of the bill of costs.  Rather, Defendant asserts that if the court denies any portion of its bill of costs pursuant to section 1920, it requests those costs under Paragraph 19 of the contract.

Although neither party has specifically addressed this issue, the court reminds the parties that this is a diversity action and Defendant seeks attorney's fees pursuant to a contract governed by Georgia law.  Therefore, Defendant's entitlement to those fees is a matter of state law while the procedures for proving those fees is governed by federal law.

Before the court reaches the point of Defendant's entitlement to the fees under state law, the court must address Plaintiff's argument that Defendant's claim to fees is barred by Federal Rule of Civil Procedure 54(d).  The arguments raised by Plaintiff with respect to Rule 54(d) were also made by the defendant in *Allgood Electric Co. v. Martin K. Eby Construction Co., Inc.*, 179 F.R.D. 646 (M.D. Ga. 1998).  There, judgment was entered in favor of the defendant, and the defendant then filed a motion for attorney's fees pursuant to four separate provisions in a contract between the parties: (1) indemnification, (2) liens, (3) payment, and (4) jobs progress and damages.  *Id.* at 647.  The defendant's answer to the

18

complaint did not contain a counterclaim for an award of attorney's fees under the contract. The court reviewed the amendments to Rule 54(d) and the 1993 Advisory Committee notes which suggested that Rule 54(d) did not "apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."  The plaintiff opposed attorney's fees because they would have been conferred by contract and thus excluded by Rule 54(d)(2)(A).  The plaintiff cited three cases to support its argument: *Caremark, Inc. v. Coram Healthcare Corporation*, 924 F. Supp. 891 (N.D. Ill. 1996); *Cohn v. Taco Bell Corp.*, 1995 WL 493453 (N.D. Ill. Aug. 16, 1995); and *Clark v. Mindis Metals, Inc.*, 1996 WL 616677 (6th Cir. Oct. 24, 1996).  *Clark* held that the procedures relating to attorney's fees in Rule 54(d)(2) do not apply when attorney's fees are recoverable under the substantive law governing the action.  Because "Defendants' claim for attorneys' fees in the present case derives from the terms of the subcontract between Eby and Allgood, which is a matter of substantive law," the district court held that defendants could not present a claim under Rule 54(d)(2).  179 F.R.D. at 649.

However, in *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268 (11th Cir. 2000), the Eleventh Circuit specifically abrogated *Allgood*.  There, the plaintiff brought a breach of contract and trade secrets action against the defendant.  The plaintiff failed on its breach of contract actions but prevailed on its trade secrets claim.  On appeal, the Eleventh Circuit reversed the decision of the trial court, and the defendant prevailed on the breach of contract claims.  On remand, the defendant moved for attorney's fees based on a contractual

19

provision allowing attorney's fees to be awarded to the prevailing party. The district court awarded those fees to the defendant and the plaintiff appealed, arguing that Rule 54(d)(2) did not apply because the attorney's fees were awarded under a contract provision. The plaintiff asserted that when the attorney's fees originated from the contract, they have to be pled and proven as damages at trial, and because the defendant had not made a request for attorney's fees in its pleadings, the district court did not have subject matter jurisdiction to consider the defendant's motion for attorney's fees.

The Eleventh Circuit rejected this argument holding that "nothing in the language of the Rule itself or in the Advisory Committee notes suggests that the failure to seek attorneys' fees in a pleading is a defect depriving the district court of subject matter jurisdiction." *Id.* at 1270. The court also noted that such relief is authorized under Rule 54(c) which "expressly provides that 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.'" *Id.* (citing *Engel v. Teleprompter Corp.*, 732 F.2d 1238 (5th Cir. 1984)). The court explicitly rejected the reasoning of *Allgood*, *Caremark*, and *Clark* in a footnote. *See id.* at 1270 n.4.[4]

_____

[4]*Pride Hyundai, Inc. v. Chrysler Financial Co., LLC*, 355 F. Supp. 2d 600, 603 (D.R.I. 2005), cited by Plaintiff, relies on *Caremark* and *Clark*. Because the Eleventh Circuit rejected that approach in *Capital Asset*, the court cannot adopt it here. Of further interest, *Pride* distinguishes *Capital Asset* by noting that the fees sought there was under a "prevailing party" clause whereas the contract in *Pride* required more than just a showing of a prevailing party. Thus, even if the court were to follow *Pride*, it would still not preclude the availability of attorney's fees under Paragraph 19 here as that paragraph is a "prevailing party" clause.

Here, JVC attempts to distinguish *Capital Asset* by noting that the parties there had agreed and consented to the bifurcation of attorney's fees for a later hearing, and thus, JVC contends, the availability of attorney's fees was never contested.  However, *Capital Asset* did not discuss this agreement in holding that the court could entertain a motion for attorney's fees under Rule 54(c).  Rather, the court noted this agreement when it discussed whether the motion for attorney's fees was timely.  *See id.* at 1271.  The court stated that because the parties had agreed on a bifurcated procedure, "Capital Asset's assertions of surprise and prejudice – on account of not having been forewarned of attorneys' fees by Finnegan's pleadings – ring hollow."  *Id.*  The court also relied again upon *Engel* at this point to show that when the provision of the contract authorizing attorney's fees is a "prevailing party" provision, only the "'identity of the prevailing party had to be established before that party's right to this form of relief became manifest.'" *Id.* at 1272.

The contract provision in this case is a "prevailing party" provision.  Paragraph 19 provides:

> ATTORNEY FEES: In the event of any legal action or proceeding between the parties hereto, GUARDSMARK shall be entitled to payment from [JVC] of all expenses and costs of litigation and reasonable attorneys' fees if GUARDSMARK shall be the party substantially prevailing in such action or proceeding.

Contract, ¶ 19.

Plaintiff did not specifically argue that Defendant's motion was untimely.  Furthermore, under Rule 54(d)(2), a party has fourteen days from the entry of judgment to

file a motion for attorney's fees.  Here, the court entered judgment on August 22, 2006, and Defendant filed its motion on September 9, 2006, within the fourteen-day window.

For the foregoing reasons, the court finds that it is bound by the authority of *Capital Asset* which is directly applicable to this case, and Guardsmark may file a motion for attorney's fees under Rule 54(d)(2) pursuant to Paragraph 19 of the contract.

The court next turns to consideration of the validity of Paragraph 19 under Georgia state law.  No party disputes that under Georgia law, contracts may provide that prevailing parties can recovery attorney's fees.  *See generally Sylar v. Hodges*, 250 Ga. App. 42 (2001).  JVC, however, argues that Paragraph 19 is more in the nature of an exculpatory clause and therefore must have the requisite prominence in order to be enforced.  *See generally Parkside Center, Ltd. v. Chicagoland Vending, Inc.*, 250 Ga. App. 607, 611 (2001) (because exculpatory clauses waive substantial rights, they must be "explicit, prominent, clear and unambiguous").  Plaintiff is correct that the court previously ruled that none of the material on the reverse side of the Service Order is prominent, explicit, or clear.  *See* Order, dated Aug. 22, 2006, at 10-12.  The question, then, is whether Paragraph 19 is an "exculpatory" clause.

Plaintiff asserts without support that a "true prevailing party provision is reciprocal, granting attorney's fees to the party that prevails under a contract."  *See* Response, at 12. Plaintiff then asserts that in *Reliance Ins. Co. v. Romine*, 707 F. Supp. 550 (S.D. Ga. 1989), the court found a similar contract provision was in the nature of an indemnification agreement.  *Id.* at 553.  *Reliance*, however, involves an agreement specified as an

indemnification agreement.  One term of that agreement is a provision that allows a party to seek reasonable attorney's fees in the enforcement of that agreement.  Nothing in *Reliance*, however, would support the conclusion that all attorney's fees clauses are in the nature of an indemnification agreement.

Georgia law defines exculpatory clauses as "[p]rovisions severely restricting remedies" or "waiv[ing] substantive rights."  *See*., *e.g.*, *Imaging Systems International, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641 (1997), and *Parkside Center, Ltd. v. Chicagoland Vending, Inc.*, 250 Ga. App. 607, 611-12 (2001).  Further, in *Pennington v. Braxley*, 224 Ga. App. 344 (1997), the court rejected a party's argument that an "entire agreement" clause was similar to an "exculpatory clause."  The court stated that an "entire agreement clause does not equate to an exculpatory clause.  Exculpatory clauses limit liability, generally for negligent acts."  *Id.* at 347.  Paragraph 19 does not restrict any remedies and does not give up a substantive right.  The court has located no case – and the parties have not pointed out any – which indicate that a prevailing party attorney's fees clause like the one described in Paragraph 19 is exculpatory in nature and would require a certain prominence.  For this reason, the court rejects Plaintiff's argument that Paragraph 19 is not enforceable because it was contained on the back portion of the Service Order.

Next, Plaintiff argues that Paragraph 19 should not be enforced even as a general contract term because it is not readable.  Plaintiff recognizes that "Georgia courts have apparently not addressed the issue of legibility or readability of contract terms."  *See* Response, at 16.  Nonetheless, Plaintiff asks this court to make a determination that "public

23

policy requires that illegible or not easily readable contract provisions need not be enforced." *Id.* Legibility or readability of contract provisions is not a unique idea in the area of contract law. Georgia law has specific requirements with respect to exculpatory clauses but has not extended those requirements to general contract provisions. This court, sitting in diversity over a matter of Georgia law, declines to hold for the first time that contracts that are not easily readable should not be enforced under Georgia public policy.[5]

Finally, Plaintiff appears to argue that because Defendant did not win every motion or every part of every motion filed with the court, it is not entitled to all of its attorney's fees. Neither Paragraph 19 nor the law surrounding the "prevailing party" supports such an assertion. Paragraph 19 states that Guardsmark is entitled to "all" of its "expenses and costs of litigation and reasonable attorneys' fees" if Guardsmark is "the party substantially prevailing in such action or proceeding." *See* Agreement, ¶ 19. Guardsmark successfully defended against Plaintiff's complaint. Plaintiff has received none of the relief it sought in its complaint. The court finds, therefore, that Defendant is the substantially prevailing party and entitled to its attorney's fees for defending the action. For these reasons, the court holds that Defendant is entitled to attorney's fees under Paragraph 19 of the Service Order.

**D.      Sufficiency of Evidence to Establish Attorney's Fees**

---

[5]Plaintiff also did not provide any citation to Georgia law for its argument that Defendant should have pointed out the attorney's fee provision to Plaintiff's representative at the time the contract was signed. *See* Response, at 16-17.

24

Now that the court has established that Defendant is entitled to attorney's fees, as the court discussed above, the procedure for proving those fees is governed by federal law.[6] For this reason, Plaintiff's citation to Georgia law for the availability of a hearing on the issue of attorney's fees is inapposite. *See* Motion for Hearing, at 1 (citing *Mitcham v. Blalock*, 214 Ga. App. 29, 32-33 (1994), and *Rowan v. Ruess*, 246 Ga. App. 139 (2000)). Plaintiff is correct that because Defendant's motion for attorney's fees depends on the "enforceability of Paragraph 19, it is governed by the substantive law of Georgia." *See* Reply, at 1. The enforceability is governed by Georgia law, but the procedure for establishing the amount is not.

An application for attorney's fees begins with the basic principle that the court "is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.* The court must then consider the reasonable hours expended. The court must exclude "excessive, redundant or otherwise unnecessary" hours. *Id.* at 1301 (citation and quotation omitted). The "fee

---

[6]Plaintiff argues that because Defendant did not turn its billing records over to Plaintiff during discovery, it may not seek to use them to support its motion for attorney's fees. The court finds that this argument is foreclosed by the reasoning of *Capital Asset*. If a party does not have to move for attorney's fees until after judgment is entered in the case, it cannot be that a party would be precluded from receiving fees because it did not turn over billing records during discovery.

applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  That burden includes providing records to the court to "show the time spent on different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*  The burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* (citing *Norman*, 836 F.2d at 1303).  "It is perfectly proper to award attorney's fees based solely on the affidavits in the record." *Norman*, 836 F.2d at 1303 (although recognizing that an evidentiary hearing might be necessary if there is a dispute of "historical fact" such as whether a case could have been settled or whether attorneys were duplicating each other's work).

Plaintiff filed a motion to strike the affidavit of Cameron Hill submitted with Defendant's request for attorney's fees.  Mr. Hill is a shareholder with the firm of Baker Donelson, which represented Defendant.  Plaintiff asserts that Mr. Hill's affidavit is conclusory and contains hearsay statements.  The majority of issues raised in Plaintiff's motion, however, relate to the sufficiency of evidence on the issue of attorney's fees and do not relate to the evidentiary acceptability of Mr. Hill's affidavit.  For example, Plaintiff contends that Mr. Hill's affidavit is conclusory because Plaintiff has not been able to relate the broad categories of litigation expenses such as "attorney fees" and "computer research" to underlying billing statements in the record.  The court addresses the attorney's fee issue below but notes here Plaintiff's few evidentiary issues.  Plaintiff does claim that Mr. Hill's

26

affidavit is not based on personal knowledge and is therefore hearsay because he did not perform all of the litigation tasks referenced in the underlying records and therefore cannot speak to them.

AO 72A
(Rev.8/82)

Mr. Hill testified in his affidavit that he was the lead attorney in this matter.  *See* Hill Aff., ¶ 4.  He then goes on to testify that Defendant seeks:

| | |
|---|---|
| Attorney's Fees | $264,581.00 |
| Computer Research | $ 18,853.21 |
| Deposition Expenses | $ 11,302.42 |
| Photocopying | $  4,069.76 |
| Transcripts | $  2,793.24 |
| Travel | $  2,856.11 |
| Service of Process | $    624.76 |
| Postage | $    386.64 |
| Long Distance | $    270.92 |
| Filing Fees | $    150.00 |
| Police Reports | $      3.00 |

*See id.*, ¶¶ 5-17.  In support of his affidavit, Mr. Hill submitted Exhibits D-N which are itemized invoices.  The court is able to discern the underlying expenses for some of the invoices, such as vendor bills to deposition reporting companies, photocopying, service of process, or postage expenses.  For other invoices, the court cannot discern their purpose. *See id.*, Exhs. E, I.  By process of elimination, the court assumes that Exhibit E sets forth computer research expenses and Exhibit I might possibly be for travel.  But this is not illustrated by Mr. Hill's affidavit.  Nor does Mr. Hill's affidavit recite – as is normally done – that he is the billing attorney for the matter and has reviewed all of the billing statements

28

sent to the client, as well as supervised the work done by the other attorneys, paralegals, and clerks whose work is reflected in the bills.  This type of statement would have alleviated Plaintiff's evidentiary concerns.

In response to Plaintiff's motion, Defendant filed a notice of supplementation pursuant to Local Rule 54.2(A)(2).  The supplementation contains an additional affidavit from Mr. Hill, as well as from Defendant's client and an attorney from an unrelated law firm who reviewed Defendant's bills and testified to their reasonableness and the reasonableness of the hourly rates charged by Baker Donelson.  Plaintiff asserts that it should receive its fees for having responded to Defendant's initial – and allegedly deficient – filing for attorney's fees.  However, under this court's Local Rules, a party seeking attorney's fees is to make a motion stating the grounds for entitlement to the fees and stating the amount of fees sought.  "Within thirty (30) days (or such other period as the court may prescribe) after filing the motion, the movant shall file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation."  *See* Local Rule 54.2(A)(2), N.D. Ga.  Thus, Defendant appropriately followed the Local Rules. However, again, it may have assisted matters for Defendant to note that it was intending to supplement the motion for attorney's fees as permitted under Local Rule 54.2(A)(2). Because Mr. Hill's affidavit and supplemental affidavit provide sufficient bases upon which the court may consider Baker Donelson's billing records, the court DENIES Plaintiff's motion to strike affidavit [113-1].

In its supplement, Defendant provides the testimony of Richard Escoffery of Elarbee, Thompson, Sapp & Wilson.  Mr. Escoffery testifies that based on his personal experience, the billing rates for each of the partners, associates, and paralegals is reasonable in the Atlanta market.  *See* Escoffery Aff., ¶¶ 7-21.  He also reviewed the billing records and itemization of attorney's fees submitted by Defendant.  With four exceptions for apparently inadvertent billing or descriptions which he cannot discern, Mr. Escoffery believes the billing to be reasonable and customary for the tasks described.  *Id.*, ¶ 24.

Defendant also submitted the affidavit of Judd Osten, Vice President Associate General Counsel for Guardsmark.  Mr. Osten testified that he supervised the instant litigation matter and has reviewed the monthly billing statements submitted by Defendant's counsel.  *See id.*, ¶¶ 11-14.  He testified that Guardsmark has paid $306,551.13 in attorney's fees and expenses to Baker Donelson, and he determined that the fees on the billing statements were reasonable.  *Id.*, ¶¶ 15-16.

Mr. Hill also submitted a supplementary affidavit in which he testifies that he supervised and directed all of the associates, paralegals, and support staff.  *Id.*, ¶ 11.  He also reviewed all of the billing statements and found the number of hours reasonably necessary to defend against the Plaintiff's complaint.  *Id.*, ¶¶ 12, 24-25; *see also* Sveada Aff.

Based on the affidavits provided by Mr. Escoffery and Mr. Hill, the court discounts the following time entries:  (1) January 13, 2006, 3.3 hours, $594.00; (2) the time expended on Justin Sveadas' pro hac vice application, totaling $227.00; (3) December 15, 2005, 3.10 hours, $349.50; (4) entries for paralegal Hall on the March 16, 2006 and April 10, 2006

invoices. Paralegal Hall billed 51.0 hours at $5865 in March and 71.4 hours at $8211.00 in April. The court notes that on the March 16, 2006 invoice, Baker Donelson wrote off 20 hours of paralegal Hall's work for a discount of $2,300. Similarly, Baker Donelson wrote off an additional 20 hours of paralegal Hall's work at $2,300 in the April 10, 2006 invoice. Therefore, the court does not deduct these figures again, but disallows the remaining 82.4 hours at $9476.00. Additionally, the court has independently reviewed the 131 pages of billing records provided by Defendant and has not found any additional areas of unnecessary billing. Thus, the court finds Defendant is entitled to $254,741.50 in attorney's fees, which is the $265,078.00 testified by Mr. Osten, *see* Osten Aff., ¶ 15, less the $10,336,50 disallowed by the court.

Defendant also seeks $41,473.13 in expenses. *See* Osten Aff., ¶ 15. Plaintiff does not raise any specific challenges to expenses (other than in the section 1920 context discussed above). The court has already awarded $15,663.06 in costs pursuant to section 1920 and thus deducts those from the expenses sought here. The court also deducts the amount of fees listed in Exhibit I because the court cannot directly correlate those law firm invoices to the expenses for which they were submitted. Thus, the court reduces the expenses award by an additional $947.90 to $24,862.17 . In sum, the court GRANTS IN PART AND DENIES IN PART Defendant's motion for attorney's fees and litigation expenses [103-1].

The court recognizes that $280,858.88 is a sizeable award of attorney's fees and expenses. However, this is the amount of money paid by the client and, thus, itself is a

31

significant determinant of reasonableness.  In its motion for a hearing, Plaintiff contends that because a "party must prove the necessity and reasonableness of its attorneys' fees and expenses, testimony from the party's counsel is required.  The written submissions in this case do not provide JVC with the opportunity adequately to confront and challenge the reasonableness of Guardsmark's fees and expenses."  *See* Motion for Hearing, at 2.  The court disagrees.  In its motion, Defendant set forth considerable evidence concerning the amount of fees, including affidavits from the attorneys doing the work and an outside attorney who reviewed the billing records, as well as itemized billing records showing the day-to-day work by time keeper with description.[7]  The court finds that this collection of information provides ample opportunity for Plaintiff to specifically challenge any portion of fees requested by Defendant.  Plaintiff chose not to do so and the court does not find it necessary to give Plaintiff another opportunity in court.  Plaintiff has not pointed the court to any special circumstances here which would require the court to permit Plaintiff to cross-examine defense counsel on the issue of attorney's fees.  Therefore, the court DENIES Plaintiff's motion for a hearing on attorney's fees [112-1].

The court, however, stays the imposition of the $280,858.88 in attorney's fees and expenses until the time for appeal has passed or, in the event of an appeal, until the time the

---

[7]The court disagrees with Plaintiff's assertion that the billing summaries submitted to the client are not admissible business records upon which the court can determine the reasonableness of an attorney's fee request.

United States Court of Appeals for the Eleventh Circuit has issued its ruling in the matter. The Clerk of the Court is DIRECTED to re-submit the matter at that time.

### III.   Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendant's motion for attorney's fees and litigation expenses [103-1]; DENIES Plaintiff's motion to alter or amend order [106-1]; GRANTS Plaintiff's motion to strike motion [108-1]; GRANTS IN PART AND DENIES IN PART Plaintiff's motion to review taxation of costs [109-1]; DENIES Plaintiff's motion for a hearing on attorney's fees [112-1]; and DENIES Plaintiff's motion to strike affidavit [113-1].

The court DIRECTS Plaintiff to pay to Defendant the following costs:  $150 (fees of the Clerk); $624.76 (fees for service and subpoenas); $13,896.71 (court reporter transcripts); and $991.59 (photocopies) for a total of $15,663.06.

33

The Clerk of the Court is DIRECTED to re-submit Defendant's motion for attorney's fees and litigation expenses [103-1] if no appeal is filed within the time allowed.

**IT IS SO ORDERED** this 26th day of September 2007.

_____ s/ J. Owen Forrester _____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

34